# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Nomination Papers of Claudia : 
De la Cruz and Karina Garcia as the : 
Socialism and Liberation Candidates : 
for President and Vice President of : 
the United States in the November 5, :   No. 379 M.D. 2024
2024 General Election :   HEARD: August 14, 2024
  :
Objection of: Alexander Reber and : 
Janneken Smucker : 


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED: August 20, 2024**

Objectors, Alexander Reber and Janneken Smucker, have filed a Petition to Set Aside the Nomination Papers of Claudia De la Cruz and Karina Garcia as the Socialism and Liberation Candidates for President and Vice President of the United States in the November 5, 2024 General Election. Following an evidentiary hearing at which both parties presented evidence and arguments,[1] the Petition is granted for the reasons set forth below.

The pertinent facts and procedural history of this matter are essentially undisputed. Under the Pennsylvania Election Code,[2] Socialism and Liberation is a

---

[1] Walter Smolarek, one of the candidates here for presidential elector, appeared *pro se* at the hearing and submitted a memorandum of law on behalf of the Candidates. While the Candidates themselves did not attend the hearing, their campaign manager did, and she confirmed that the Candidates were unable to secure legal representation in this matter.

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

political body rather than a political party.[3] This distinction is significant as it determines the process by which candidates are nominated. "In short, a political party uses the primary election to nominate its candidate[s]; a political body nominates its candidate[s] by collecting the requisite number of signatures from electors, of any party or no party, and filing nomination papers with the Secretary of the Commonwealth." *Working Families Party v. Commonwealth*, 169 A.3d 1247, 1252 (Pa. Cmwlth. 2017) (*en banc*). Political bodies may nominate candidates for more than one office via a single nomination paper, as was done here.[4] By signing the nomination paper, electors[5] therefore indicate their support for all of the candidates listed therein.

> Notably, Section 951(e)(6) of the Election Code provides that
>
> [t]here shall be appended to each nomination paper offered for filing *an affidavit of each candidate nominated therein*, stating . . . (6) that in the case where he is a candidate for election at a general or municipal election, *he was not a registered and enrolled member of a party thirty (30) days before the primary* held prior to the general or municipal election in that same year[.]

25 P.S. § 2911(e)(6) (emphasis added). Moreover, Section 951.1 pertaining to the limitations on candidate eligibility states, in pertinent part: "Any person who is a registered and enrolled member of a party during any period of time beginning with thirty (30) days before the primary and extending through the general or municipal election of that same year *shall be ineligible to be the candidate of a political body*

---

[3] *See* Section 801 of the Election Code, 25 P.S. § 2831.

[4] Section 951(c) of the Election Code, 25 P.S. § 2911(c).

[5] The Election Code refers to voters as "electors," which could create some confusion in a matter dealing with the electors chosen to participate in the Electoral College. Here, those candidates will be referred to as "Presidential Electors" and the term "electors" will refer to voters.

in a general or municipal election held in that same year[.]" 25 P.S. § 2911.1 (emphasis added) (Disaffiliation Provision).[6]

Here, Socialism and Liberation timely submitted its nomination paper and signature pages, which were accepted by the Department of State. That nomination paper lists multiple candidates for political office, namely: Claudia De la Cruz for President; Karina Garcia for Vice President; and 19 individuals for Presidential Electors. Along with the nomination paper and signature pages, Socialism and Liberation submitted to the Department of State a signed and notarized form titled "Political Body Candidate's Affidavit" for not just De la Cruz and Garcia, but for each of the 19 Presidential Electors. *See* Exhibit B to Objection Pet. The signed candidates' affidavits are identical and all contain the following language:

> CANDIDATE'S AFFIDAVIT – I do swear (or affirm) that my residence, my election district and the name of the office for which I desire to be a candidate are as specified below, that I am eligible for said office, and . . . that if I am a candidate for election at a general or municipal election *I shall not be a registered and enrolled member of a political party at any time during the period of thirty (30) days prior to the primary up to and including the day of the following general or municipal election*[.]

*Id.* (emphasis added).

Socialism and Liberation's nomination paper also included 765 pages with the purported signatures of 10,940 electors. *See* Objection Pet. ¶ 11; Exhibits A1-A3 to Objection Pet. Section 951(b) of the Election Code regarding nominations by political bodies provides that

---

[6] Added by the Act of July 12, 1980, P.L. 649, No. 134.

3

> where the nomination is for any office to be filled by the electors of the State at large, the number of qualified electors of the State signing such nomination paper shall be at least equal to two per centum of the largest entire vote cast for any elected candidate in the State at large at the last preceding election at which State-wide candidates were voted for.

25 P.S. § 2911(b). The Department of State has calculated that the number of signatures required under this formula for the 2024 General Election would be 33,043. *See* Objection Pet. ¶ 13. However, in the guidance provided on its website under "Third Party Nomination Paperwork," the Department of State indicates that "[t]he Secretary of the Commonwealth will accept nomination papers for presidential candidates which contain 5,000 signatures," based on a consent decree entered in federal litigation regarding the Constitution, Green and Libertarian parties. *See Constitution Party of Pa. v. Cortés* (E.D. Pa., No. 12-2726, filed Feb. 1, 2018).[7]

Objectors timely filed their objection petition asserting that Socialism and Liberation's nomination paper must be set aside for multiple reasons. First, Objectors maintain that the nomination papers are facially defective because the Candidates did not obtain the 33,043 signatures required by Section 951(b) of the Election Code. Further, they argue that the Secretary's acceptance of only 5,000 signatures was erroneous because the *Cortés* ruling was an as-applied holding, specifically applicable only to the Constitution, Green and Libertarian parties.

Next, Objectors claim that 7 of the candidates for Presidential Elector on the Socialism and Liberation slate are ineligible because they were each

---

[7] This guidance can be found on the Department's website at https://www.pa.gov/en/agencies/dos/programs/voting-and-elections/running-for-office/third-party-nomination-paperwork.html#accordion-21c3b2a9ea-item-604f71d017 (last visited Aug. 19, 2024).

4

registered and enrolled members of the Democratic party more than 30 days prior to the April 2024 primary election and continued as such through the August 14, 2024 hearing. They also maintain that the affidavits described above that were signed by these Presidential Elector candidates were, therefore, false. Thus, Objectors conclude that Candidates De la Cruz and Garcia have not nominated 19 candidates eligible to be Presidential Electors and so have not met the requirements to be placed on the November 2024 General Election ballot. Finally,[8] Objectors have sought an award of costs and attorneys' fees.

The Candidates rejoin that the two percent requirement of Section 951(b) of the Election Code, 25 P.S. § 2911(b), is unconstitutionally burdensome, citing *Cortés*. In that litigation the United States District Court opined:

> The combined effect of Section [951(b)] and Section [977 of the Election Code, 25 P.S. §§ 2911(b) and 2937,] imposes a severe burden on plaintiffs' associational rights. The potential costs which a minor party must absorb are astonishing. A minor party's defense of nomination papers, if taken to its conclusion, can cost up to $50,000. If that defense is unsuccessful, the party may then be liable for the challenger's costs which, in the last [11] years, have twice been levied in excess of $80,000. Thus, a minor party candidate who seriously wants to place his or her name on the general election ballot must be prepared to assume a $130,000 financial liability. This figure is staggering and would deter a reasonable candidate from running for office. *See Storer* [*v. Brown*], 415 U.S. [724, 742 (1974)]. These costs go far beyond what the *Bullock* Court considered to be "patently exclusionary." [*Bullock v. Carter*,] 405 U.S. [134,] 143 [(1972)].

---

[8] Objectors also challenge the Socialism and Liberation nomination paper claiming that of the 10,940 signature lines submitted, 6,334 are invalid, and so even the lower threshold of 5,000 valid signatures has not been met. This challenge was stayed pending argument and decision on the issues described above.

*Constitution Party of Pa. v. Cortés*, 116 F. Supp. 3d 486, 502 (E.D. Pa. 2015). After two appeals to the United States Court of Appeals for the Third Circuit, which essentially agreed with the District Court's assessment that the statutory requirement imposed an unconstitutional burden on the parties before it, the District Court entered a consent decree that the Constitution, Green and Libertarian parties would be held only to the 5,000-signature requirement which the Secretary now applies to all political bodies.

While, as Objectors note, the federal decisions held that 25 P.S. § 2911(b) was unconstitutional only *as applied* to the Constitution, Green and Libertarian parties, it seems self-evident that *any* political body subject to that statutory provision would face the same sort of burden found in *Cortés*. Accordingly, it would seem equally self-evident that imposing a requirement that any other political body obtain (and hence be forced to litigate via an objection petition) 33,043 valid signatures is presumptively unconstitutional. Therefore, unless an Objector can come forward with persuasive evidence that some extraordinary characteristic of the political body at issue distinguishes it in such a way that it does not, in fact, suffer an unconstitutional burden, the same holding should apply. Here, no such evidence was presented, so I must conclude that Objectors have not met their burden of showing that the 10,940 signatures proffered by Socialism and Liberation in its nomination paper is facially inadequate.

With respect to the Disaffiliation Provision, however, I find the Objectors' Petition to have merit. At the hearing on August 14, 2024, Objectors produced records of the Statewide Uniform Registry of Electors (SURE) system[9]

---

[9] The SURE System is "a single, uniform integrated computer system" maintained by the Department of State that "[c]ontain[s] a database of all registered electors in this Commonwealth." 25 Pa.C.S. § 1222(c)(1). The database contains information for each elector collected during the

6

conclusively showing that seven of Socialism and Liberation's Presidential Electors were registered as Democrats long before the April primary election and continued to be so as of August 13, 2024.[10] Indeed, six of the seven had actually voted in the Democratic primary in April 2024. Registration information printed from the SURE system was certified by the Secretary and identified by a SURE system operator. This evidence was not disputed by the Candidates, and I find it to be conclusive.

I note first that under the clear language of the Election Code, nominees for Presidential Electors are candidates subject to the Disaffiliation Provision. Sections 951(e) and 953(a) of the Election Code, 25 P.S. §§ 2911(e) and 2913(a). The Candidates argue that the Disaffiliation Provision is unconstitutional, and that the Commonwealth has no compelling interest sufficient to justify a restriction on the freedom to vote, the freedom of association and the right to equal protection. With respect to presidential elector nominees' right to freedom of association, suffice it to say that such candidates are free to associate with any party or political body they choose, just not to be affiliated with two such entities at the same time. Moreover, the burden on political bodies is minimal; they need only find 19 individuals unaffiliated with another party to act as their presidential elector nominees. While disqualification of the nomination papers may deprive voters of the ability to vote for the political body's candidates, this is true whenever potential candidates fail to meet qualification requirements. Finally, the Candidates' equal protection claim is not clear, but to the extent they are complaining that major parties are treated differently, it is clear that the nomination methods are so different in

___

voter registration process, including the elector's name, address, and party affiliation. *In re Doyle*, 304 A.3d 1091, 1096 n.3 (Pa. 2023).

[10] The Candidates argue that the affidavits to the contrary were signed in "good faith." This argument strains credulity. Certainly the Presidential Elector Candidates were aware that they were registered Democrats, and I find their affidavits to the contrary to be knowingly false.

structure that they are simply not similarly situated. Moreover, the United States Supreme Court has found a far more restrictive disaffiliation provision to pass constitutional muster. In *Storer v. Brown*, the Supreme Court considered a California statute that required disaffiliation for a full year before the general election. It upheld that statute finding compelling state interests justified the restriction, including securing an orderly election process and prevention of interparty raiding, noting that

> [i]t works against independent candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an "independent" candidate to capture and bleed off votes in the general election that might well go to another party.
>
> . . . .
>
> It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status.

415 U.S. at 735-36.

Even if the seven Presidential Elector candidates are disqualified, the Candidates assert they should be able to substitute new candidates who can meet the disaffiliation requirement. Although the Election Code allows substitution in certain circumstances, those circumstances are not present here. Section 980 provides, in pertinent part:

> In case of the death or withdrawal *of any candidate nominated by any political body by nomination papers*, the committee named in the original nomination papers may nominate a substitute in his place by filing in the proper

8

office a substituted nomination certificate, which shall set forth the facts of the appointment and powers of the committee (naming all its members), of the death or withdrawal of the candidate and of the action of the committee thereon, giving the name, residence and occupation of the candidate substituted thereby, and the truth of these facts shall be verified by the affidavit annexed to the certificate of at least two members of the committee.

25 P.S. § 2940 (emphasis added). In other words, substitution is not allowed to cure a nomination paper that was defective when filed. As our Supreme Court stated in rejecting the attempt to substitute a new candidate for a placeholder candidate whose nomination paper did not contain the requisite candidate's affidavit:

> Although the use of a placeholder candidate is a permissible feature of the nominating process for political bodies, the Election Code draws no distinction between temporary candidates and permanent ones. In order to substitute the name of a *bona fide* nominee of a political body onto the ballot in that manner, a placeholder first must be duly nominated in accordance with the provisions of the Election Code. As we have made clear, "the failure to affix an affidavit of the candidate" to a nomination paper constitutes "a fatal defect" that "*cannot be cured by subsequent conduct*."

*In re Scroggin*, 237 A.3d 1006, 1019 (Pa. 2020) (citations omitted, emphasis in original). It is of no moment that the Presidential Elector candidates here were not intended to be placeholders. The result is the same—no substitution can be made after the filing deadline if the nomination paper of the original candidate, as here, contained a fatal defect.

Finally, the Candidates argue that if the 7 Presidential Elector candidates are removed, De la Cruz and Garcia should remain on the ballot with the remaining 12 Presidential Electors. This, too, is impermissible. The formula which

9

provides for the election of 19 Presidential Electors is not an entitlement that De la Cruz, Garcia and the Socialism and Liberation political body can waive, but rather a constitutional requirement. The United States Constitution provides for the selection of the President and Vice President by the Electoral College, made up as follows:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress. . . .

U.S. Const., Art. II, § 1. In this manner, our Constitution provides for the specific proportional representation among the states in the Electoral College.[11] If the winning Presidential and Vice Presidential candidates in even one state had fewer Presidential Electors than provided in the Constitution (and the Election Code), the proportionality among the states mandated by the Constitution would be subverted. And if that were to happen in multiple states, the constitutional scheme for the election of the President and Vice President would be eviscerated.

Accordingly, I must strike the nomination papers of the Socialism and Liberation party and its slate of candidates.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[11] The Election Code provides that Pennsylvania's Presidential Electors shall be chosen by a vote of the qualified electors of the Commonwealth pursuant to the same formula. Section 1501 of the Election Code, 25 P.S. § 3191.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Nomination Papers of Claudia : 
De la Cruz and Karina Garcia as the : 
Socialism and Liberation Candidates : 
for President and Vice President of : 
the United States in the November 5, :          No. 379 M.D. 2024
2024 General Election : 
 : 
Objection of: Alexander Reber and : 
Janneken Smucker : 

## <u>O R D E R</u>

AND NOW, this 20th day of August, 2024, following an evidentiary hearing, it is hereby ordered that the Petition to Set Aside the Nomination Papers of Claudia De la Cruz and Karina Garcia as the Socialism and Liberation Candidates for President and Vice President of the United States in the November 5, 2024 General Election is hereby GRANTED. The Secretary of the Commonwealth is directed to REMOVE Claudia De la Cruz and Karina Garcia from the November 5, 2024 General Election ballot as the Socialism and Liberation Candidates for President and Vice President of the United States.

The Prothonotary is directed to send a copy of this Order to the Secretary of the Commonwealth and to the parties: Candidates at info@votesocialist2024.com and karinagarcianyc@gmail.com, and Objectors' counsel at tford@dilworthlaw.com.

Each party shall bear his or her own costs.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita